UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-62121-RUIZ/STRAUSS

CHANEL, INC.,

      Plaintiff,

v.

HANDBAGSTORE, *et al.*,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** is before me upon the Motion to Dismiss ("Motion") filed on February 9, 2021 by Chen Xue Cai ("Filer Cai") purportedly as "the operator of Best Fashion Gifts and Trulym," two of the Defendants in this case.[1] (DE 45; DE 45-1; DE 46).[2] The Honorable Rodolfo A. Ruiz II, United States District Judge, referred this case to me to take all necessary and proper action as required by law.  (DE 53).  I have reviewed the Motion, the response ("Response") (DE 49) and the record.  A reply has not been filed, and the time for filing a reply has now passed. Being otherwise duly advised, for the reasons stated below, I respectfully **RECOMMEND** that the Motion be **DENIED** or **STRICKEN**.

---

[1] The Motion consistently uses the singular "Defendant" without designating a specifically named Defendant.  (DE 45; DE 45-1).  Because Filer Cai asserts holding the position of "operator" as to Defendants Best Fashion Gifts and Trulym, I construe the Motion as having been filed on behalf of both of these Defendants and construe that the Motion's reference to "Defendant" is inclusive of both Defendant Best Fashion Gifts and Defendant Trulym.  (DE 45).

[2] The Memorandum in Support of Its Motion to Dismiss ("Memorandum") was filed twice. (DE 45-1; DE 46).  For ease of reference, I will cite going forward only to the Memorandum at DE 45-1.

## I.    **BACKGROUND**

This case arises pursuant to Plaintiff's action to enjoin various Defendants, including Defendants Best Fashion Gifts (Defendant 47) and Trulym (Defendant 51) (collectively, the "Subject Defendants"), from infringing Plaintiff's trademarks and distributing goods bearing confusingly similar imitations of Plaintiff's trademarks. (DE 1; DE 18). On November 4, 2020, the District Court granted under seal Plaintiff's *Ex Parte* Application for Entry of Temporary Restraining Order ("TRO"), Preliminary Injunction, and Order Restraining Transfer of Assets ("Order Granting TRO") finding that Plaintiff satisfied the requirements for issuance of a TRO. (DE 9 at 1).

The record indicates that the Subject Defendants were aware of the instant proceedings at early stages in the litigation. The Order Granting TRO identified an e-mail address associated with Defendant Best Fashion Gifts of: bestgiftsq@outlook.com, although no means of contact was listed for Defendant Trulym. *Id.* at 19. On November 19, 2020, Plaintiff filed its Amended Complaint for Damages and Injunctive Relief, which still reflected no means of contact for Defendant Trulym and still identified an e-mail address of bestgiftsq@outlook.com for Defendant Best Fashion Gifts. (DE 18 at 1, 26).

On November 23, 2020, Plaintiff filed Proof of Service on various Defendants, including the Subject Defendants, indicating that the Subject Defendants were served on November 20, 2020 pursuant to the Court's Order (DE 10) granting Plaintiff's *Ex Parte* Motion for Order Authorizing Alternate Service of Process on Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3).[3]

---

[3] Plaintiff's Response attaches an affidavit of its counsel, Mr. Stephen M. Gaffigan, declaring that, on November 6, 2020, his firm served the TRO on the digital mall Wanelo.co ("Wanelo") hosting the Subject Defendants' e-commerce stores along with the digital mall's payment processor ("Stripe") and that both Wanelo and Stripe identified contact information for Defendant Trulym as "trulymaker@outlook.com." (DE 49-1 at ¶¶1-4). The instant Motion lists "trulymaker@outlook.com" under the signature block as shown below:

(DE 24; DE 24-1 at 1-2, 4; DE 24-2 at 1, 4).  Also, on November 23, 2020, Plaintiff filed its Notice of E-Mail Inquiries Received from Certain Defendants in Connection with Asset Restraint and Service indicating that the Subject Defendants, through counsel based in the U.S. and/or in China, *contacted Plaintiff's counsel* by e-mail on behalf of their clients regarding possible resolutions of the matter.  (DE 21 at n.1).  On November 24, 2020, the District Court held a Preliminary Injunction Hearing at which only counsel for Plaintiff appeared.

On November 25, 2020, the Court entered its Order Granting Motion for Entry of Preliminary Injunction and noted that the Subject Defendants' counsel had contacted Plaintiff's counsel but that the Subject Defendants, along with other Defendants, had not yet entered an appearance or filed any formal response with the Court.[4]  (DE 29 at n.2).  On January 26, 2021, Plaintiff entered its Request for Clerk's Entry of Default as to various Defendants, including the Subject Defendants ("Request for Default").  (DE 36).  The record reflects that, as of Plaintiff's

---

Respectfully submitted;

_____ /s/ Chen Xue Cai 陈学才

trulymaker@outlook.com

(DE 45 at 1).

---

[4] In granting the motion for a preliminary injunction, the District Court found that, "by operating Internet based e-commerce stores or interactive photo albums via Internet marketplace platforms and/or social media or image hosting websites under their seller identification names and/or interactive, commercial Internet websites operating under their domain names . . ., [the Subject Defendants] have advertised, promoted, offered for sale, or sold goods bearing what Plaintiff has determined to be counterfeits, infringements, reproductions and/or colorable imitations of the Chanel Marks."  (DE 29 at 6-7).  Furthermore, the Court found that Plaintiff's investigative firm accessed the Subject Defendants' e-commerce stores, placed orders for infringing products, paid for the products and arranged for the products to be shipped to the Southern District of Florida entirely online.  *Id.* at 7-9, n.4.

filing of the Request for Default, the Subject Defendants' counsel had made no appearance nor had the Subject Defendants filed anything with the Court in this case. The Clerk entered Default as to the Subject Defendants, and other Defendants, on January 27, 2021. (DE 39). Plaintiff then moved for entry of final default judgment against various Defendants, including the Subject Defendants, on January 27, 2021. (DE 40). The Court entered a Default Final Judgment and Permanent Injunction against various Defendants, including the Subject Defendants, on January 29, 2021 ("Default Final Judgment").[5] (DE 44).

On February 8, 2021, the instant Motion was filed.[6] (DE 45). The Motion seeks "dismissal" for "good causes" while noting Plaintiff's filing of a motion for default judgment. (DE 45 at 1-2).

Although the Motion is titled as a Motion to Dismiss,[7] I construe the Motion as a motion to set aside a default judgment.[8] "A document filed *pro se* is to be liberally construed." *Erickson*

---

[5] The District Court signed the Default Final Judgment and Permanent Injunction on January 28, 2021. (DE 44 at 7). On June 11, 2021, the Court entered an Amended Default Final Judgment and Permanent Injunction to add certain specified Defendants. (DE 62).

[6] Filer Cai purportedly executed the instant Motion on January 28, 2021 and listed an e-mail address of trulymaker@outlook.com as previously discussed. (DE 45 at 1). Even though the Motion purports to have been executed on January 28, 2021, the same date that the District Court signed the Default Final Judgement, the Clerk's Office records receiving the Motion on February 8, 2021. (DE 45 at 1, 11). In accordance with Local Rule 5.1(b), the date that the Motion was served is the date that the Motion was docketed by the Clerk of Court – in this case, February 8, 2021. Local Rule 5.1(b) of the Local Rules of the United States District Court for the Southern District of Florida.

[7] The Memorandum states specifically that "Defendant store respectfully requests that this Court dismiss this case with prejudice, as to Defendant and other defendants that may be affected by the foregoing reasons." (DE 45-1 at 10).

[8] Because the Court entered the Default Final Judgment before the Motion was entered, I construe the Motion as a motion set aside a *default judgment* rather than a motion to set aside a *default*. *See* n.6 *supra*.

*v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).  Furthermore, "federal courts generally must look beyond the labels of filings by pro se [parties] to interpret them under whatever statute would provide relief." *Wilkerson v. Georgia*, 618 F. App'x 610, 611 (11th Cir. 2015) (quoting *Means v. Alabama,* 209 F.3d 1241, 1242 (11th Cir. 2000); internal quotation marks omitted).  Here, Filer Cai does not present credentials as a lawyer but rather as "an operator" or lay person facilitating the business conducted by the Subject Defendants.  Additionally, a motion to dismiss would be moot at this stage of the litigation.  Accordingly, I find that standards applicable to *pro se* filings apply and construe the Motion as seeking relief from the Court's entry of a default judgment against the Subject Defendants.

The Motion seeks relief on grounds that the Lanham Act cannot reach the Subject Defendants Extraterritorially and that service of process was insufficient.  (DE 45-1 at 1-2, 7).  Plaintiff argues that the Motion should be denied for three reasons: (1) the Motion does not properly identify the filer or Defendants; (2) the Lanham Act does apply to the Subject Defendants' infringing activities; and (3) service of process on the Subject Defendants was proper and sufficient.  I address each of these arguments in light of the standards set forth below.

## II.   **LEGAL STANDARD**

"The effect of a default judgment is that the defendant '... admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.'"  *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (quoting *Nishimatsu Construction Co., Ltd. v. Houston National Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  Under Federal Rule of Civil Procedure 55(c), "[t]he court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."  Fed. R. Civ. P. 55(c).  As the Eleventh Circuit has explained:

Rule 55(c) provides an additional, less "stringent" standard: good cause. *See Jones v. Harrell*, 858 F.2d 667, 669 (11th Cir.1988). However, that standard applies to setting aside an entry of default and is inapplicable in the instant case because the district court, in fact, entered a default judgment. *See* Fed.R.Civ.P. 55(c) (providing the court may set aside an entry of default for good cause and a default judgment under Rule 60(b)). Accordingly, our Rule 60(b) analysis governs this issue. *See Harrell*, 858 F.2d at 669 ("Because a judgment had not been entered the trial court had the discretion to set aside the entry of default under Rule 55(c) rather than under the more stringent provisions of Fed.R.Civ.P. 60(b) that would have controlled if judgment had been entered.").

*Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 738 (11th Cir. 2014).

Rule 60(b) states:

**(b) Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Thus, "Federal Rule[ ] of Civil Procedure 60(b) provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988). Here, the Subject Defendants do not allege fraud or any similar misconduct, nor newly discovered evidence, nor allege that the judgment has been satisfied or that applying it going forward is no longer equitable. Therefore, I do not address

Rules 60(b)(2), (b)(3) or (b)(5) relative to the instant Motion.  For the sake of thoroughness, however, I address the standards for relief under Rules 60(b)(1), (b)(4) and (b)(6).

"Under Rule 60(b)(1), the district court has discretion to relieve a party from a final judgment for mistake, inadvertence, surprise, or excusable neglect. Even so, in ruling on a Rule 60(b)(1) motion, the discretion of the district court is not unbounded, and must be exercised in light of the balance that is struck by Rule 60(b) between the desideratum of finality and the demands of justice." *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F.3d 1329, 1343 (11th Cir. 2015) (internal quotation marks and citations omitted).  "At the same time, our caselaw makes clear that the party seeking relief under Rule 60(b)(1) must provide a justification so compelling that the district court ha[s] to vacate the challenged order. To do so, the defaulting party must establish that[:] (1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *Id.*

Pursuant to Rule 60(b)(4), "[a] judgment can be set aside for voidness where the court lacked jurisdiction or where the movant was denied due process. Voidness for purposes of a 60(b)(4) motion contemplates lack of jurisdiction or defects in due process that deprive a party of notice or an opportunity to be heard." *Id.*

"Rule 60(b)(6) . . . grants federal courts broad authority to relieve a party from a final judgment upon such terms as are just, provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5). The Rule does not particularize the factors that justify relief, but [the Supreme Court has] previously noted that it provides courts with authority adequate to enable them to vacate judgments

whenever such action is appropriate to accomplish justice, while also cautioning that it should only be applied in extraordinary circumstances." *Liljeberg*, 486 U.S. at 863-64.

## III.   DISCUSSION

For reasons detailed below, the Motion fails for several reasons.  As an initial matter, Plaintiff correctly argues that the Motion is due to be denied because it is procedurally defective. Among other issues, Filer Cai, who does not profess to be counsel for the Subject Defendants, appears to be precluded as a matter of law from representing the Subject Defendants in this action. Nonetheless, for the sake of thoroughness, I also analyze the Motion on the merits.

After analyzing the Motion on the merits, I conclude that neither the Motion nor the circumstances preceding the Court's entry of the Default Final Judgment provide grounds for setting aside the default judgment in this case.  Indeed, the Motion falls short of demonstrating mistake, inadvertence, surprise, or excusable neglect in order to justify relief under Rule 60(b)(1). Furthermore, while inapplicability of the Lanham Act and insufficient service of process could each warrant a finding that the Final Default Judgement is void, the Motion fails to demonstrate that the Lanham Act does not apply and fails to demonstrate the insufficiency of service of process. Therefore, I conclude that no basis exists for relief under Rule 60(b)(4).  Additionally, I do not find that extraordinary circumstances exist in this case to justify relief under Rule 60(b)(6).

### A.   Whether Procedural Defects Warrant Striking of the Motion

As previously noted, I find that the Motion's procedural defects are fatal.  Plaintiff correctly argues that the Motion is procedurally deficient because: (1) the Motion violates requirements pertaining to information to be included in a signature block; (2) Filer Cai is not an attorney licensed in Florida and is not a member of the Southern District of Florida; and (3) Filer Cai's self-identification as the operator of the Subject Defendants is questionable.  (DE 49 at 1-5).

Rule 5.1(a)(6) of the Local Rules of the Southern District of Florida pertaining to conventionally filed documents states that a signature block is to be included "with the counsel's name, street address, telephone number, e-mail address, and Florida Bar or other applicable bar identification number."[9]  Similarly Federal Rule of Civil Procedure 11 requires that "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name – or by a party personally if the party is unrepresented. The paper must state the signer's address, e-mail address, and telephone number."  Fed. R. Civ. P. 11(a).  Here, as previously set forth, the Motion's signature block includes only an e-mail address: trulymaker@outlook.com.  Thus, the Motion falls far short of providing the information required by the applicable rules.  In addition, the lack of information further illuminates Filer Cai's inability to represent the Subject Defendants in a capacity as counsel and exacerbates the questionability of Filer Cai's identity in general, which issues are discussed next in further detail.

As Plaintiff argues, the Subject Defendants appear to be business entities, which "may appear in federal court[ ] only through licensed counsel."  *Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993).  *See also Benjamin v. Airborne Sec. & Prot. Servs., Inc.,* No. 12-61624-CIV, 2012 WL 12886185, at *1 (S.D. Fla. Dec. 18, 2012) (noting that, in filing an answer to a complaint, an individual's "attempted representation of [a corporate defendant] border[ed] on the unlicensed practice of law—a third-degree felony under Florida law" pursuant to Fla. Stat. §454.23).  Indeed, courts strike filings made by individuals attempting to represent artificial entities when those individuals do not purport to be licensed counsel.  *Rivas v. Kool Kars, Inc.*, No. 12-62011-CIV, 2013 WL 47001, at *1 (S.D. Fla. Jan. 3, 2013) (striking the Answer filed by an individual on behalf of a corporate defendant because the filer "d[id] not

---

[9] Rule 1.1 of the Local Rules of the Southern District of Florida states that "the word 'counsel' shall be construed to apply to a party if that party is proceeding pro se."

purport to be a licensed attorney"). Here, Filer Cai does not purport to be a licensed attorney; rather, Filer Cai asserts being "the operator" of the Subject Defendants, which implies a layman's status with regard to those entities. (DE 45 at 1). Furthermore, Plaintiff alleges, and its counsel declares, that "The Florida Bar records do not list [Filer] Cai as a person who may practice law in the state of Florida." (DE 49 at n.5; DE 49-1 at n.6). Accordingly, I conclude that the Motion fails as a matter of law because Filer Cai is not a licensed attorney and, therefore, has no ability to represent the Subject Defendants in this action.

In addition, the very identity of Filer Cai as "the operator" of the Subject Defendants is suspect. Plaintiff's investigator, who purchased products alleged to be counterfeits from the Subject Defendants, declared that the packages received bore names differing from Filer Cai's name. (DE 49 at 3-4). Further, the packages bore return addresses reflecting separate locations for each of the Subject Defendants indicating that their locations were "more than 2,000 kilometers apart."[10] (DE 49 at 3-4). The logical inference, therefore, is that a single individual would not be responsible for the operations of both stores given the significant physical distance between them.

Also, Plaintiff argues that the digital mall, Wanelo, and the payments processor, Stripe, responded to the TRO and identified the owners of the Subject Defendants as being different than Filer Cai. The most complete information was provided by payments processor, Stripe, which listed the following information for the Subject Defendants:

---

[10] Defendant Best Fashion Gifts' return address is listed in the name of "Hanjie" at an address in Beijing, China and Defendant Trulym's return address is listed in the name of "Zhuoqiongjun" at an address in Shenzhen, China. (DE 49-5 at 2-3, 7-8).

| Defendant | Legal Name/ Company Name | Contact Information |
|---|---|---|
| Best Fashion Gifts | CRKP/ Lijun Xu | bestgiftsq@outlook.com<br>19 Lukens Drive,<br>Suite 300 540046<br>New Castle, DE |
| Trulym | trulym/ Jezlih Olivero | trulymaker@outlook.com<br>777 Excelsior Blvd.,<br>Apt. 309<br>Excelsior, MN 55331-1952<br><br>340 S Lemon Ave. #8167<br>Walnut, CA 91789 |

(DE 49 at 4-5). Although the e-mail address of "trulymaker@outlook.com" is the same e-mail address that Filer Cai lists in the Motion's signature block, Filer Cai is not associated by name to the financial accounts or to either of the Subject Defendants' online store presence. Furthermore, Plaintiff avers that its investigator determined that the addresses listed above (which are all the addresses provided by Wanelo and Stripe) are not, and have never been, associated with Filer Cai's name. *Id.* at 5.

Finally, Plaintiff argues that the package containing the Motion originated from someone other than Filer Cai. Specifically, Plaintiff argues that the shipping label identifies the Motion's sender as a business entity. (DE 49 at 5). The shipping label for the package is shown below:



(DE 45 at 3). While not dispositive of whether Filer Cai sent the Motion, the shipping label clearly does nothing to further identify Filer Cai because the shipping label on the packing containing the Motion lists the sender as someone completely different from Filer Cai. Even more indicative that the Motion's sender is disassociated from the Subject Defendants, however, is that the shipping label reflects that the sender is from Hong Kong rather than from The People's Republic of China ("China"), which the Motion asserts is where the Subject Defendants would be properly served as discussed *infra* in greater detail. (DE 45-1 at 7-10). In summary, considering the Motion's lack of conformance to rules that would further identify Filer Cai, the lack of anything in the record to affirm that Filer Cai is associated with the Subject Defendants, Plaintiff's efforts and subsequent inability to confirm Filer Cai's association with the Subject Defendants, and given that Filer Cai does not purport to be counsel for the Subject Defendants, I conclude that the Motion should be stricken from the record. *Rivas*, 2013 WL 47001 at *1.

B. **Whether Grounds Exist for Relief Due to Mistake, Inadvertence, Surprise, or Excusable Neglect**

Turning to the merits of the Motion, I conclude that no grounds exist to recommend relief under Rule 60(b)(1) due to mistake, inadvertence, surprise, or excusable neglect. Because the Motion avers that "Defendant has retained a Chinese lawyer to negotiate a settlement with Plaintiff's attorneys" and that "they are having active negotiation," it is reasonable to infer that the Subject Defendants believe that Plaintiff should not have filed a motion for default judgment with respect to them based upon the parties' active negotiations. (DE 45-1 at 1). The Subject Defendants' negotiations with Plaintiff, however, provide no basis to excuse the lack of timely response to the Complaint. As previously noted, a party seeking to set aside a default judgment pursuant to Rule 60(b)(1) must demonstrate a meritorious defense, a lack of prejudice to the other side and **a good reason for failing to reply to the complaint**. *Architectural Ingenieria Siglo XXI, LLC*, 788 F.3d at 1343. Here, however, even if the Subject Defendants were able to show that they have a meritorious defense and that granting relief would not prejudice Plaintiff (which I do not find that the Subject Defendants have done), they have not provided any reason – let alone good reason – for why they failed to respond to the Complaint prior to the Court's entry of Default Final Judgment. The Motion's reference to "significant difficulties" and the "[taking of] days to identify [electronic service] emails from thousands of scam emails in the junk mail" does not excuse the lack of response to the Complaint. (DE 45-1 at 1). Indeed, the Subject Defendants immediately retained counsel after being served on November 20, 2020, and their counsel communicated with Plaintiff's counsel within sixteen (16) hours following service upon them. (DE 49 at 10, n.12; DE 49-1 at ¶6). The Subject Defendants offer no reason why, after being served on November 20, 2020, they failed to make an appearance, enter an Answer or make an

13

appropriate motion in this action prior to the entry of Default Final Judgment on January 29, 2021.

Thus, I find that the Motion fails to provide a basis for relief under Fed. R. Civ. P. 60(b)(1).

### C.  **Whether Relief is Due on the Basis of Voidness**

The Subject Defendants fail to demonstrate that the judgment is void in order to warrant relieve under Fed. R. Civ. P. 60(b)(4).  Specifically, the Subject Defendants' argument that subject matter jurisdiction does not exist because their allegedly infringing conduct is beyond the reach of the Lanham Act is without merit.  (DE 45-1 at 2-7).  Likewise, the Subject Defendants' argument that service of process was defective also lacks merit.  *Id.* at 7-10.

### 1.  **The Lanham Act Applies**

I find that the Lanham Act reaches the Subject Defendants' allegedly infringing conduct because the conduct at issue occurred within the United States rather than extraterritorially. "Federal courts have subject-matter jurisdiction over claims brought under the Lanham Act when a defendant uses a plaintiff's trademark in interstate commerce."  *Frida Kahlo Corp. v. Tupperware Corp.*, No. 13-21039-CIV, 2014 WL 11880681, at *2 (S.D. Fla. Mar. 31, 2014) (citing 15 U.S.C. §§ 1114(1), 1125(a) and *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1194-95 (11th Cir. 2001) (describing "use in commerce" as a "jurisdictional predicate")). "Extraterritorial application of the Lanham Act permits federal courts to apply the act to a defendant's conduct that occurs outside of the territorial boundaries of the United States when: (1) the defendant 'is a United States corporation'; (2) 'the foreign activity had substantial effects in the United States'; and (3) 'exercising jurisdiction would not interfere with the sovereignty of another nation.'"  *Id.* at *3-*4 (S.D. Fla. Mar. 31, 2014) (quoting *Int'l Cafe, S.A.L. v. Hard Rock Cafe Int'l (U.S.A.), Inc.*, 252 F.3d 1274, 1278 (11th Cir. 2001) and finding that websites hosted in the United States that did not provide the ability for online ordering did not provide subject matter

jurisdiction for Lanham Act purposes because the plaintiff "failed to establish that Defendants have used its trademark 'in commerce' with respect to any website"). "[E]xtraterritoriality tests [for subject matter jurisdiction] are inapplicable[, however,] where [a] plaintiff seeks a remedy for imported goods sold to American consumers." *McBee v. Delica Co.*, 417 F.3d 107, 122-23 (1st Cir. 2005) (finding that "Courts have repeatedly distinguished between domestic acts of a foreign infringer and foreign acts of that foreign infringer").

Here, the Motion asserts that the Subject Defendants "are located in and/or ship from China."[11]  (DE 45-1 at n.2).  Thus, the Subject Defendants posit that the Lanham Act does not apply to their activities because "Plaintiff must plead a substantial effect on U.S. commerce resulting from Defendant's alleged conduct abroad" and did not.  (DE 45-1 at 6) (citing, *inter alia*, *Steele v. Bulova Watch Co.*, 344 U.S. 280, 287-88 (1952)) (hereinafter, "*Bulova Watch*").  The instant Motion cites for support of its "substantial effects" argument an out-of-district case that applies *Bulova Watch* and a balancing test "to extraterritorial conduct," which case states in relevant part:

> It is well-established that United States courts have jurisdiction to apply the Lanham Act to allegedly infringing **conduct occurring outside the United States** when necessary to prevent harm to United States commerce. *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 285–86, 73 S.Ct. 252, 97 L.Ed. 319 (1952) (affirming an injunction prohibiting a U.S. citizen from selling fake watches in Mexico in part because such sales adversely affected the trademark holder in America). In *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633 (2d Cir.1956), the Second Circuit articulated three factors to consider when determining whether the Lanham Act should be applied **to extraterritorial conduct**: (1) whether the defendant is a United States citizen; (2) whether there exists a conflict between the defendant's trademark rights under foreign law and the plaintiff's trademark rights under domestic law; and (3) whether the defendant's conduct has a substantial effect on United States commerce. *Id.* at 642; *Atl. Richfield Co. v. ARCO Globus Int'l Co.*, 150 F.3d 189, 192 (2d Cir.1998). "[T]he absence of one of the above factors might well be determinative," and the absence of two "is certainly fatal." *Vanity Fair*, 234

---

[11] The instant Motion is confusing due to references in error to a complaint in another lawsuit. Plaintiff explains that the Motion quotes from a complaint in an infringement action brought in New York by a completely different and unrelated plaintiff.  (DE 49 at 7-8, n.8).

F.2d at 643; *see also Totalplan Corp. of Am. v. Colborne*, 14 F.3d 824, 831 (2d
Cir.1994) (observing that the absence of two factors "is fatal to an argument that
the conduct is governed by the Lanham Act"). "[C]ourts are to balance the factors
in deciding whether the 'contacts and interests of the United States are sufficient to
support the exercise of extraterritorial jurisdiction.'" *Software AG Inc. v. Consist
Software Solutions, Inc.*, No. 08 Civ. 389(CM), 2008 WL 563449, at *14 (S.D.N.Y.
Feb. 21, 2008) (quoting *Warnaco, Inc. v. VF Corp.*, 844 F. Supp. 940, 950
(S.D.N.Y.1994)).

*Juicy Couture, Inc. v. Bella Int'l Ltd.*, 930 F. Supp. 2d 489, 505 (S.D.N.Y. 2013) (emphasis added).

However, *Bulova Watch* and its progeny only apply when the infringing activities are
**extraterritorial**.

Indeed, the Eleventh Circuit has held that "the 'substantial effects' test derived from *Bulova
Watch* . . . concerns the jurisdiction of United States courts over trademark infringement **occurring
in a foreign country**." *Direct Niche, LLC v. Via Varejo S/A*, 898 F.3d 1144, 1149 (11th Cir. 2018)
(emphasis added). Where "[t]he purportedly infringing activity . . . occur[s] in the United States,
. . . the 'substantial effects' jurisdictional test for extraterritorial infringement has no
application[.]" *Id.* at 1149-50.

Contrary to the Subject Defendants' contention, Plaintiff's claims are focused on their
activities occurring within the United States rather than activities they undertook outside of the
United States. Plaintiff has established that the Subject Defendants used an e-commerce platform
based in the United States for the purpose of promoting and selling allegedly infringing products
to consumers in the United States, including Florida. (DE 49 at 6-7) (citing the Amended
Complaint, DE 18 at ¶11). The Subject Defendants operate e-commerce stores via Wanelo, a
digital mall based in San Francisco, CA.[12] (DE 49-1 at 2). Wanelo's payment processor, Stripe,
is dual-headquartered in San-Francisco and Dublin according to its website. *See* Stripe's website
at: https://stripe.com/about (last accessed June 21, 2021) ("Stripe is dual-headquartered in San

---

[12] *See* Wanelo's website: https://wanelo.co/about (last accessed June 21, 2021).

16

Francisco and Dublin, with offices in London, Paris, Singapore, Tokyo, and more."). Plaintiff argues, therefore, that they sought to enjoin the Subject Defendants' operation of commercial storefronts on an American e-commerce platform that served the purpose of promoting, selling, accepting payments for, and shipping infringing products within the United States. (DE 49 at 6). I agree that Plaintiff's litigation is targeted to address the Subject Defendants' activities in the United States. Thus, I find that the Lanham Act does apply because the allegedly infringing activities are not extraterritorial. Accordingly, the Subject Defendants' argument that this Court lacks subject matter jurisdiction[13] is without merit.

## 2.   Service of Process was Sufficient

I find that service of process in the instant case was sufficient. For reasons explained below, the alternate methods of service that the Court approved do not violate international law.

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987). In other words, "'service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served.'" *Id.* (quoting *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 444–45 (1946)). "[S]ervice of process in a federal action is covered generally by Rule 4 of the Federal Rules of Civil Procedure." *Id.*

"Federal Rule of Civil Procedure 4(f) outlines how to serve a summons when the defendant resides in a foreign country. In relevant part, Rule 4(f) states: '[A]n individual ... may be served at

---

[13] *See* DE 45-1 at un-numbered footnote on p. 5 (stating that "[b]oth the Supreme Court and multiple U.S. Circuit Courts of Appeal have consistently treated the Lanham Act's extraterritorial reach as being an issue of subject matter jurisdiction" and citing, among other authority, *Bulova Watch Co.*, 344 U.S. at 281).

a place not within any judicial district of the United States: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention.'" *Winston v. Walsh*, 829 F. App'x 448, 450 (11th Cir. 2020), *cert. denied*, No. 20-1225, 2021 WL 1520834 (U.S. Apr. 19, 2021) (quoting Fed. R. Civ. P. 4(f)(1)).  Pursuant to Federal Rule of Civil Procedure 4(f)(3), "service may be effected 'by other means not prohibited by international agreement as may be directed by the court.'" *Prewitt Enterprises, Inc. v. Org. of Petroleum Exporting Countries*, 353 F.3d 916, 926 (11th Cir. 2003) (quoting Fed. R. Civ. P. 4(f)(3)).  Thus, the Court must determine whether the method of service employed here is an agreed means of service authorized by the Hague Service Convention[14] or, at least, a means "not prohibited by international agreement." *Id.*  Moreover, ultimately "the Due Process Clause requires every method of service to provide notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) "When service of process is challenged, [the plaintiff] must bear the burden of establishing its validity." *Winston*, 829 F. App'x at 450 (quoting *Aetna Bus. Credit, Inc. v. Universal Décor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981)).

Addressing the challenge here to service of process requires review of the Hague Service Convention.[15]  The purpose of the Hague Service Convention "is to simplify, standardize, and

---

[14] The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361 (hereinafter, "Hague Service Convention").

[15] Like Plaintiff, I find it reasonable to infer that the Subject Defendants are residing in the People's Republic of China ("China" or "PRC").  (DE 49 at 15).  Furthermore, it is undisputed here that "[t]he United States and the People's Republic of China [("PRC")] are both signatories to the Hague Service Convention." (DE 45-1 at 7; DE 49 at 8; DE 10 at 3).  Therefore, the Hague Service Convention is implicated because "there is occasion to serve process abroad." *Volkswagenwerk*, 486 U.S. at 705.

generally improve the process of serving documents abroad[,]" and it "specifies certain approved methods of service and pre-empts inconsistent methods of service whenever it applies." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017) (internal quotation marks and citations omitted) (recognizing in the latter statement that the Hague Service Convention has Supremacy Clause effect). Another objective of the Hague Service Convention is "to ensure that there will be adequate notice in cases in which there is occasion to serve process abroad[;] . . . [therefore,] compliance with the Convention is mandatory in all cases to which it applies[.]" *Volkswagenwerk Aktiengesellschaft*, 486 U.S. at 705-06. *Id.* at 707.

> Article 1 of the Hague [Service] Convention states that the "Convention shall not apply when the address of the person to be served ... is not known." Hague Service Convention art. 1, Nov. 15, 1965, 20 U.S.T. 361. Article 2 mandates that each contracting country "designate a Central Authority which [ ] undertake[s] to receive requests for service coming from other" countries to the agreement. *Id.* art. 2. Once a Central Authority receives a request, it should serve documents "by a method prescribed by [its] internal law[s]." *Volkswagenwerk*, 486 U.S. at 699, 108 S.Ct. 2104. After the Central Authority serves the person named in the request, it must "complete a certificate ... that the document has been served." Hague Service Convention art 6., 20 U.S.T. 361.

*Winston*, 829 F. App'x at 450–51.

The Hague Service Convention also provides for service by alternate methods provided the destination country does not object to those types of service, i.e., service on "diplomatic or consular agents," service through "consular channels," service on "judicial officers, officials or other competent persons," and direct service "by postal channels." Hague Service Convention, art. 8-10. As relevant here, the Supreme Court has held that Article 10(a) of the Hague Service Convention specifically permits service by mail "as long as the receiving state does not object." *Water Splash, Inc.*, 137 S. Ct. at 1513. Furthermore, "Article 19 clarifies that the Convention does not preempt any internal laws of its signatories that permit service from abroad via methods not otherwise allowed by the Convention." *Water Splash, Inc.*, 137 S. Ct. at 1508.

However, while the Hague Convention does not expressly authorize service by e-mail, according to a majority of courts, "alternative means of service [such as e-mail that are] unmentioned by the Hague Convention are not prohibited if 'the receiving state has not objected to [that alternative form of service]." *Hangzhou Chic Intelligent Tech. Co. v. Partnerships & Unincorporated Associations Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021) (quoting *Water Splash, Inc.*, 137 S. Ct. at 1513 (citing *Brockmeyer v. May*, 383 F.3d 798, 803-04 (9th Cir. 2004)); *Commodity Futures Trading Comm'n v. Caniff*, 2020 WL 956302, at *5-6 (N.D. Ill. Feb. 27, 2020) ("apply[ing] the [*Water Splash*] analysis to service by email").[16]

In approving service upon the Subject Defendants via e-mail and website posting under Federal Rule of Civil Procedure 4(f)(3), the District Court found that a signatory nation's objection to the alternate methods of service provided by Convention "is expressly limited to those means [stated in the objected-to Article.]"  (DE 10 at 2-3) (citing *Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, Case No. 15-cv-20590-FAM, 2015 U.S. Dist. LEXIS 122000 (S.D. Fla. Sept. 14, 2015)).  The District Court specifically noted that China "[has not] expressly objected to service via e-mail or website posting."  (DE 10 at n.3).  Therefore, the District Court held that "[a] court acting under

---

[16] Nonetheless, federal courts are divided as to whether the Hague Service Convention limits their authority to authorize service of process by e-mail.  A minority view contends that e-mail service is not permitted when a nation has objected to Article 10 unless an exception applies because it bypasses the methods of service that the Hague Service Convention authorizes.  *See e.g., Genus Lifesciences Inc. v. Tapaysa Eng'g Works Pvt. Ltd.*, No. 20-CV-3865, 2021 WL 915662, at *4 (E.D. Pa. Mar. 10, 2021) (citing *Facebook, Inc. v. 9 Xiu Network (Shenzen) Tech. Co.*, 480 F. Supp.3d 977, 985-86 (N.D. Cal. 2020)).  In other words, "China's objection to Article 10 . . . most likely includes attempted service by e-mail" because "[t]here is no reason for a nation to affirmatively object to a service method that is not authorized or identified because the Convention specifies certain approved methods of service and pre-empts inconsistent methods of service wherever it applies."  *Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 413-16 (N.D. Tex. 2020) (internal quotation marks and citations omitted).

Rule 4(f)(3) . . . remains free to order alternative means of service where a signatory nation has not expressly objected to those means.[17]  *Id.* at 3 (quoting *Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011)).

The Motion argues that "China formally objects to all methods of service identified under Article 10" and that Plaintiff's court-approved alternative service of process – by direct e-mail and website publication – was in contravention of the Hague Service Convention because it was "without the consent of appropriate local authorities in the [PRC]" and thus violates China's internal laws.  (DE 45-1 at 7-10).  The Motion specifically contends that service by e-mail and website publication are not allowed under Article 19 of the Hague Service Convention[18] and that Article 277 of the Peoples Republic of China ("PRC") Civil Procedure Law prohibits service within the territory of the PRC without the consent of appropriate authorities of the PRC.  (DE 45-1 at 8-9).  The Motion's arguments are unavailing, however, because the District's Order approving alternate service was not in contravention of the Hague Service Convention.

---

[17] Plaintiff additionally argues that the Hague Service Convention does not apply because the addresses of the Defendants were unknown at the time of filing and service (and remain unknown). (DE 49 at 9) (citing Hague Service Convention, art. 1).  In support, Plaintiff attaches a declaration of its counsel, Stephen M. Gaffigan, Esq., stating that "[t]he addresses of Defendants were unknown at the time of filing and service and are still unknown at this time.  (DE 49-1 at ¶9). Plaintiff's Motion for Alternate Service, however, did not include an averment that the addresses of Defendants were unknown; therefore, the District Court did not consider this in granting the motion.  (DE 7; DE 10).  Accordingly, I do not further consider Plaintiff's argument as to the inapplicability of the Hague Service Convention.

[18] As explained above, Article 19 addresses additional methods of service of documents "coming from abroad" that are allowed by internal law of the contracting state.  Hague Service Convention, art. 19.  Article 19, therefore, does not prohibit methods of service that are otherwise allowed under the Convention.

According to the majority view, followed by this District, China's objection to the alternative means of service in Article 10,[19] which includes an allowance for service by mail, does not preclude service by e-mail or website posting. *See e.g.*, *Chanel, Inc. v. designerchanelgirl.com*, No. 20-62447-CIV, 2020 WL 8226843, at *1 (S.D. Fla. Dec. 2, 2020) (stating that "[an] objection is expressly limited to those means [of service objected-to] and does not represent an objection to other forms of service, such as e-mail or publication" (quoting *Karsten Mfg. Corp. v. Store*, No. 18-61624-CIV, 2018 WL 8060707, at *1 (S.D. Fla. July 26, 2018))).  Indeed, "the majority of courts [hold] that a country's objection to postal service under the Hague Convention does not equate to an objection to email service" because "the instantaneous and traceable nature of email cures the concerns with postal service." *Hangzhou Chic Intelligent Tech. Co.*, 2021 WL 1222783 at *3.[20]

China's domestic civil procedure law cited in the Motion also does not constitute a sufficient objection to service by e-mail or website posting.  Article 277 states, in relevant part, "no foreign authority or individual shall, without permission from the competent authorities of the People's Republic of China, serve process or conduct investigation and collection of evidence within the territory of the People's Republic of China." *Sun Grp. U.S.A. Harmony City, Inc. v. CRRC Corp. Ltd.*, No. 17-CV-02191-SK, 2019 WL 6134958, at *1 (N.D. Cal. Nov. 19, 2019). However, service by e-mail and website posting does not occur "within the territory of the [PRC]." Furthermore, the Motion fails to articulate the relevance of this provision of law to the provisions

---

[19] The parties do not dispute that China has objected to the alternative means of service outlined in Article 10 of the Hague Service Convention.  (DE 45-1 at 8; DE 49 at 15).

[20] Also, "unlike postal service, email does not require physical intrusion on Chinese territory, which is China's express objection to the availability of postal service under the Hague Convention." *Hangzhou Chic Intelligent Tech. Co.*, 2021 WL 1222783 at *3.

of the Hague Service Convention.  If the Motion intended that Article 277 serve to demonstrate that China would not approve e-mail or website posting under the Hague Service Convention, it fails to do so because the internal law of China is not equivalent to an objection under the Hague Service Convention.   Furthermore, as determined in *Hangzhou Chic Intelligent Tech. Co.*, "Chinese law permits its courts to order service by email on a party outside of China, in part because email permits the person to be served to 'acknowledge' receipt[;] . . . [therefore,] it cannot credibly object to U.S. courts ordering the same on defendants located in China."   2021 WL 1222783 at *4 (finding also that "China has not 'objected' to email service" and that "the Court's order of email service pursuant to Rule 4(f)(3) was appropriate").

Finally, in authorizing the alternative means of service, the District Court has illustrated how the alternative means fulfills the Due Process Clause's demand (and the Hague Convention's concomitant purpose) for notice reasonably calculated to appraise a defendant of the proceedings. The District Court first observed the abundance of cases cited by Plaintiff where courts have permitted plaintiffs to serve by e-mail or website posting.  (DE 10 at 3-4).  The District Court then explained that the defendants in the cited cases, as in the instant case: "(1) . . .conducted their business over the Internet; (2) . . . used e-mail regularly in their businesses; and (3) the plaintiff show[ed] e-mail is likely to reach defendants.[21]  (DE 10 at 4).  Indeed, as Plaintiff averred, the

---

[21] The *Hangzhou* court summarized cases like the instant case as follows:

> This is one of many cases filed in this District alleging counterfeit product sales in the United States, on internet market places like eBay and Amazon, by defendants located outside the United States. Plaintiffs in these cases often join tens or hundreds of defendants in a single case, but it is rare for any of the defendants to appear. Almost all the claims are resolved by settlement or default judgment.

> Because the defendants are located outside the United States and are allegedly somewhat fly-by-night operations intent on evading U.S. laws, plaintiffs generally seek temporary restraining orders through ex parte proceedings. Plaintiffs contend, and district courts usually agree, that it is necessary to restrain the defendants'

Subject Defendants' counsel contacted Plaintiff's counsel within sixteen (16) hours of being served thus demonstrating the effectiveness of e-mail in reaching Defendants.[22]  (DE 49-1 at ¶¶5-6; DE 49-2).  Accordingly, for all of the above reasons, I find no error in the District Court's granting of alternate service and conclude that service of process was proper and sufficient.

### D.  Whether Extraordinary Circumstances Exist to Warrant Relief

The Supreme Court advises that "it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process" when considering whether extraordinary circumstances exist to vacate a final judgment under Federal Rule of Civil Procedure 60(b)(6).  *Liljeberg*, 486 U.S. at 864.  "Rule 60(b)(6)[, however,] does not reward a party that seeks to avoid the consequences of its own 'free, calculated, deliberate choices.'" *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1357 (11th Cir. 2014) (quoting *Ackermann v. United States*, 340 U.S. 193, 198 (1950).  Indeed, "[u]nder Rule 60(b)(6), a party

---

assets without notice in order to prevent them from removing their assets from the
United States or otherwise hiding them. Those orders also usually permit service
by email based on the plaintiff's allegation that true physical addresses for the
defendants are not readily ascertainable or verifiable.

*Hangzhou Chic Intelligent Tech. Co.*, 2021 WL 1222783, at *1 (N.D. Ill. Apr. 1, 2021).

[22] Plaintiff argues that courts have found e-mail service constitutionally acceptable for due process purposes because it "can be reasonably calculated to provide a defendant with real notice." (DE 49 at 12) (quoting *In re Int'l Telemedia Assocs., Inc.*, 245 B.R. 713, 721 (N.D. Ga. 2000)).  "[A] defendant's actual notice of the litigation[, however,] . . . is insufficient [standing alone] to satisfy Rule 4's requirements."  *Lazaro v. U.S. Dep't of Agr.*, 186 F. Supp. 2d 1203, 1217 (M.D. Fla. 2001) (internal quotation marks omitted) (quoting *Mid–Continent Wood Products v. Harris*, 936 F.2d 297, 301 (7th Cir.1991) (quoting *Way v. Mueller Brass Co.*, 840 F.2d 303, 306 (5th Cir.1988))).  Nonetheless, "receipt of actual notice is an important factor in considering whether service of process is adequate."  *Prewitt Enterprises, Inc.*, 353 F.3d at n.14 (citing *Hanna v. Plumer*, 380 U.S. 460, 463 n.1 (1965) (dictum)); *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  In considering actual notice, "courts [a]re careful to determine that service of process [i]s in substantial compliance with the formal requirements of the Federal Rules; actual notice alone [i]s not enough to allow the court personal jurisdiction over the defendant."  *Id.* (collecting cases).

remains under a duty to take legal steps to protect his own interests." *Id.* (internal quotation marks and citation omitted).

Here, the Subject Defendants present no reason to award extraordinary relief under the catch-all provision of Rule 60(b)(6).  As I previously stated, the Subject Defendants were aware of this litigation from its early stages.  Yet, the Subject Defendants chose not to appear or respond until after the Default Final Judgment was entered.  Accordingly, I conclude that the Subject Defendants cannot now "avoid the consequences of [their] own free, calculated, deliberate choices." *Aldana*, 741 F.3d at 1357.  Therefore, I find that Rule 60(b)(6) provides no basis for relief.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, I respectfully **RECOMMEND** that the Motion (DE 45) be **DENIED** or **STRICKEN** from the record.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Rodolfo A. Ruiz, II, United States District Judge.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained

in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (1989); 11th Cir. R. 3-1 (2016).

      **DONE** and **SUBMITTED** in Fort Lauderdale, Florida, this 30th day of June 2021.

**Jared M. Strauss**
**United States Magistrate Judge**

Copies furnished via CM/ECF to:

Hon. Rodolfo A. Ruiz, II

Counsel of record